**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROBERT MILLNER,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 2:18-cv-13473 (SDW)<br><br>**OPINION**<br><br>July 25, 2019 |

**WIGENTON,** District Judge.

Before this Court is Plaintiff Robert Millner's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"). Specifically, Plaintiff appeals Administrative Law Judge Sharon Allard's ("ALJ Allard") denial of his claim for a period of disability and disability insurance benefits under the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction according to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court finds that substantial credible evidence supports ALJ Allard's factual findings and her legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

# I. PROCEDURAL AND FACTUAL HISTORY

## A. Procedural History

On October 22, 2014, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning April 1, 2010, due to post-traumatic stress disorder ("PTSD"), depression, and anxiety. (Administrative Record [hereinafter R.] 15, 186.) Plaintiff's application was denied initially on March 12, 2015, and again on reconsideration on June 25, 2015. (R. 15.) On July 23, 2015, Plaintiff requested a hearing; on May 17, 2017, Plaintiff, along with counsel, appeared and testified at an administrative hearing before ALJ Allard in Newark, New Jersey. (*Id.*) Vocational Expert Rocco J. Meola ("VE Meola") also testified. (*Id.*) Subsequently, ALJ Allard concluded that Plaintiff was not disabled under §§ 216(i) and 223(d) of the Act from the alleged onset of disability through the date last insured, March 31, 2017.[1] (R. 27.)

## B. Factual History

### 1. Personal and Employment History

Plaintiff was born on October 26, 1963 and was fifty-three years old at the time of ALJ Allard's 2017 decision. (R. 38, 85.) Plaintiff earned a college degree and previously held jobs in the advertising industry. (R. 40-41.)

### 2. Medical History

On March 31, 2010, Plaintiff witnessed a passenger in his car commit suicide ("the Incident"). (R. 20-21, 278.) Since then, he has experienced PTSD and, for a period of time, struggled with alcohol abuse. (R. 21.) Plaintiff reports an alleged onset date of April 1, 2010, and

[1] Plaintiff's earnings record illustrates that he had acquired sufficient quarters of coverage to remain insured through March 31, 2017, his "date last insured." (R. 15.) Therefore, Plaintiff must establish disability on or before that date to be entitled to disability insurance benefits. (*Id.*)

continued to work until July 2011. (R. 17, 278.) Shortly after his onset date, Plaintiff received antidepressant treatment, including medication and monthly psychiatric appointments with Charles Semel, M.D. ("Dr. Semel") and Charles Park, M.D. ("Dr. Park"). (R. 22.) He also has received alcohol counseling and psychotherapy with Edward Fox, M.D. ("Dr. Fox"). (*Id.*) The record mainly consists of consultative examinations connected to Plaintiff's workers' compensation claim, letters, questionnaires, and reports prepared for litigation. (R. 277-372.)[2]

Dr. Fox's Reports and Questionnaires

Dr. Fox has periodically evaluated Plaintiff since July 2010. (R. 361.) The record contains Dr. Fox's Social Security Disability Psychiatric Reports and questionnaires, but lacks any underlying treatment notes describing specific functional limitations. (R. 309-16, 361-67.) Dr. Fox described Plaintiff as situationally depressed and angry, but exhibiting mostly appropriate behavior. (R. 311.) Dr. Fox opined that stress causes Plaintiff to have mood swings and difficulty concentrating, reasoning, and exercising proper judgment. (R. 314.) In contrast, when relaxed, Plaintiff performed adequately and had good concentration, memory, and superior intellect. (*Id.*) Despite social limitations under pressure, Plaintiff was alert, oriented, and well-groomed, exhibited no limitations in understanding or memory, and did not experience suicidal ideations. (R. 336-38.)

Peter Crain's, M.D. ("Dr. Crain") Consultative Examination

In 2011, Dr. Crain reviewed Plaintiff's past records, which described him as tense, anxious, depressed, irritable, and on edge, and conducted a consultative examination. (R. 277-79.) During Dr. Crain's appointment, Plaintiff complained of depression, exhaustion, and despair, as well as

[2] The record also contains opinions from John Russo, M.D., Lee Gardner, M.D., and William B. Head Jr., M.D., which document Plaintiff's PTSD, alcoholism, anxiety, depression, and related symptoms, as well as the need for therapy and medication. (R. 280-96.) However, these are not discussed in detail, as they are not relevant to issues raised on appeal and are duplicative of the other examinations described.

chest pain, headaches, nausea, and constipation. (R. 278.) Dr. Crain noted that Plaintiff's thoughts followed a logical progression, although he had some tangential responses to questions. (R. 279.) Plaintiff reported that when he had stopped seeing Dr. Fox for a period of time, he drank more, felt isolated, and had increased anxiety, flashbacks, and suicidal thoughts. (R. 278.)[3] However, once he resumed those sessions, Plaintiff reported drinking less and having less frequent suicidal thoughts. (*Id.*) Although Plaintiff spoke of his anguish and repeatedly broke down in tears during the examination, he explained that confiding in Dr. Fox helps him dramatically. (R. 279.)

Dr. Crain diagnosed Plaintiff with chronic PTSD and major depressive disorder, and emphasized his need to meet with Dr. Semel and Dr. Fox. (*Id.*) However, Dr. Crain did not assess any specific functional abilities or limitations. (R. 277-79.)

Dr. Park's Treatment Records

Dr. Park evaluated Plaintiff periodically from 2013 through 2017, and during these four years, Plaintiff's PTSD symptoms improved. (R. 298-308, 320-27, 344-57.) Despite consistent mild depression and anxiety, with the assistance of medication, Plaintiff was generally stable and able to complete daily activities such as attending therapy and coaching his sons' baseball team. (*Id.*) By 2017, Plaintiff consistently denied suicidal ideation, intent, or plan. (*Id.*)

Kim Arrington's, Psy. D., ("Dr. Arrington") Consultative Examination

In 2015, Dr. Arrington conducted a consultative examination of Plaintiff, noting that Plaintiff completed many tasks independently and reported normal functioning levels. (R. 317-19.) Plaintiff exhibited symptoms of anxiety and depression, such as panic attacks, fatigue, irritability, nightmares, difficulty concentrating and sleeping, and mild impairment of recent and remote memory skills. (R. 317-18.) However, Plaintiff was cooperative, had adequate social skills

[3] In May 2011, Dr. Fox stopped seeing Plaintiff because he was not receiving payment from workers' compensation. (*Id.*) However, in August 2011, Dr. Fox agreed to see Plaintiff without payment. (*Id.*)

and presentation, and maintained appropriate eye contact. (R. 318.) Plaintiff had intelligible and fluent speech, clear voice quality, and adequate expressive and receptive language. (*Id.*) He showed coherent and goal directed thought processes, intact attention and concentration, average intellectual functioning, and fair insight and judgment. (*Id.*)

Dr. Arrington noted Plaintiff could independently complete many daily activities, including: dressing, bathing, cooking, cleaning, using a computer, managing money, and driving. (*Id.*) Plaintiff completed household chores, read the newspaper, and tried to workout. (R. 319.) He also coached, bathed, fed, and picked up his children from school. (*Id.*) Dr. Arrington noted Plaintiff's PTSD and his mild difficulty learning and performing new and complex tasks. (*Id.*) However, Plaintiff could follow and understand simple directions, independently perform simple tasks, and maintain attention, concentration, and a regular schedule. (*Id.*)

**3. Hearing Testimony**

ALJ Allard conducted a hearing on May 17, 2017, during which Plaintiff testified about his education, prior employment, medical conditions, treatment and daily activities. (R. 34-68.)

Plaintiff explained that he worked in advertising since college. (R. 40.) He initially focused on print advertising, and subsequently progressed to outside field sales. (R. 40-41.) In his last job, Plaintiff marketed businesses on the Internet. (R. 40.)

Throughout his testimony, Plaintiff described his struggles after the Incident. (R. 42-67.) Although he attempted to go back to work, he had difficulty functioning, concentrating, and remembering, and ultimately relied on workers' compensation benefits. (R. 21, 55-56.) Plaintiff became addicted to alcohol, but subsequently received treatment from Dr. Fox and attended numerous Alcoholics Anonymous ("AA") meetings. (R. 42, 44.) Plaintiff explained that he is no longer addicted and the last time he drank abusively was three or four years ago. (R. 43.)

Nevertheless, Plaintiff still visits with Dr. Fox weekly and attends AA meetings every other week. (R. 44, 59.)

Plaintiff testified how he has become more irritable, short-tempered, and socially isolated from his friends and family. (R. 52-53, 62, 66.) He stated that the Incident has affected his concentration, and that certain activities take longer than usual, such as grocery shopping and reading the newspaper. (R. 46-47, 61.) Despite these effects, Plaintiff explained he prepares his own meals, attends doctors' visits as scheduled, and remembers to take his medication. (R. 55-59, 61.) He can drive, and often goes to the supermarket or to his twin ten-year old boys' school. (R. 44-45.) Plaintiff has lived alone since his divorce and his sons stay at his house every other weekend. (R. 45.) He also testified that he volunteers as a coach on his sons' baseball team and stated that his boys and psychiatric treatment have "probably saved my life." (R. 48-49, 57.)

VE Meola also testified, concluding that jobs existed in the economy that an individual with Plaintiff's limitations could perform, such as mail sorter, microfilm mounter, and weigher. (R. 69-70.)[4]

## II. LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). However, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

[4] However, VE Meola did opine that if an individual was off task 15% of the day, this would preclude all work in a competitive labor market. (R. 70.)

*Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Id.* (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (internal quotation marks omitted)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence she accepts and which she rejects, and the reasons for that determination." *Cruz*, 244 F. App'x at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

**B. The Five-Step Disability Test**

42 U.S.C. § 1382 governs a claimant's eligibility for social security benefits. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity due to any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do her previous work but [unable],

considering her age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in §§ 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to

work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rules ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the "Listing of Impairments" in 20 C.F.R. Part 404, Subpart P, App. 1, 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant can perform past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§

404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant can do any other work, considering RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III. <u>DISCUSSION</u>

In her decision dated June 30, 2017, ALJ Allard correctly applied the five-step disability test before determining that Plaintiff was not disabled. (R. 15-27.) The ALJ's findings are supported by substantial credible evidence and she appropriately considered all of Plaintiff's medically supported complaints as shown by his consultative visits and limited medical treatment.

At step one, ALJ Allard determined that Plaintiff did not engage in substantial gainful activity as of his alleged onset date. (R. 17); *see also* 20 C.F.R. §§ 404.1571 *et seq*. At step two, ALJ Allard found that Plaintiff suffered from: anxiety disorders; affective disorders; alcohol substance addiction disorders; and trauma and stress related disorders, including PTSD. (R. 17);

*see also* 20 C.F.R. § 404.1520(c). The severity of Plaintiff's impairments warranted proceeding to the next step of the sequential evaluation process.

At step three, however, ALJ Allard found that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526). (R. 16-17.) The severity of Plaintiff's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listing in §§ 12.04, 12.06 and 12.15. (*Id.*) In making this finding, ALJ Allard considered whether the "paragraph B" criteria were satisfied. (R. 17.) To satisfy the "paragraph B" criteria, the mental impairment must result in at least one extreme or two marked limitations in a broad area of functioning, which include: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. (R. 17-18); *see also* 20 C.F.R. 404, Subpart P, Appendix 1. A marked limitation means independent, appropriate, effective, and sustained functioning is seriously limited. (R. 18); *see also* 20 C.F.R. 404, Subpart P, Appendix 1. An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis. (*Id*.)

In understanding, remembering, or applying information, ALJ Allard determined Plaintiff had mild limitation. (R. 18.) The record did not show serious deficits in long-term and short-term memory, insight, or judgment. (*Id*.) Plaintiff could recite his health history, generally did not complain of problems understanding and remembering, and reported that treatment mostly controlled his symptoms. (*Id*.) Plaintiff also described watching television, reading, caring for his sons, and performing household activities, such as cooking, cleaning, and shopping. (*Id*.)

In interacting with others, ALJ Allard determined Plaintiff had moderate limitation. (*Id*.) Plaintiff stated he avoids being around people and is socially withdrawn, but interacted normally

with treating practitioners. (*Id.*) He did not have serious deficiencies in eye contact, speech, or conversations and did not complain of serious problems with interpersonal interactions. (*Id.*) Plaintiff also visited his mother, coached his sons' baseball team, and attended group therapies. (*Id.*)[5]

With regard to concentrating, persisting, or maintaining pace, ALJ Allard found Plaintiff had moderate limitation. (*Id.*) Although Plaintiff complained of difficulty in this area, medication, psychotherapy, and alcoholism treatment, controlled his symptoms. (*Id.*) Plaintiff had no serious problems completing calculations, nor was he overly distractible or slow. (R. 19.) Plaintiff reported completing many daily tasks that require some concentration, persistence and pace, such as watching television and reading for pleasure. (*Id.*)

As for adapting or managing oneself, ALJ Allard again found that Plaintiff had only moderate limitation. (*Id.*) The medical evidence shows Plaintiff did not usually complain about serious problems adapting and managing himself. (*Id.*) Practitioners observed Plaintiff had no hygiene deficiencies and wore appropriate attire. (*Id.*) Plaintiff could handle mental demands of parenting, despite some stress, and could independently make plans and goals. (*Id.*) Plaintiff also completed daily activities without significant assistance from others. (*Id.*) Thus, the ALJ determined the "paragraph B" criteria were not satisfied, as the record did not show Plaintiff's impairments caused two "marked" limitations or one "extreme" limitation. (*Id.*)

ALJ Allard also determined that the evidence in the record failed to establish that Plaintiff could satisfy the "paragraph C" criteria listing in §§ 12.04, 12.06 and 12.15. (*Id.*) ALJ Allard noted that the record does not establish that Plaintiff had only marginal adjustment, or in other words, a minimal capacity to adapt to changes in his environment or to demands that are not

[5] Plaintiff did complain of poor or difficult interactions with his ex-wife during their divorce, but otherwise Plaintiff generally had no serious problems interacting with others. (*Id.*)

already part of his daily life. (*Id*.) Further, the evidence in the record does not show that simple changes or increased demands have led to a deterioration of Plaintiff's functioning or to an inability to function outside of the home. (*Id*.) Plaintiff failed to cite specific evidence from the record that fulfills the requirements of Listing §§ 12.04, 12.06 and 12.15, "paragraph C." (*Id*.) Additionally, no State agency psychological consultant found that a mental listing is medically equaled. (R. 20.)

Before undergoing the analysis in step four, ALJ Allard followed the proper two-step process to determine Plaintiff's RFC. (R. 20-25.) At step one, the ALJ found that Plaintiff's medically-determinable impairments could reasonably be expected to cause his alleged symptoms. (R. 22.) However, at step two, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence in the record. (*Id.*) After carefully considering the evidence, ALJ Allard found that Plaintiff had the RFC to perform a full range of work at all exertional levels, with a few non-exertional limitations such as being off task 10% of the workday. (R. 20.) Plaintiff could frequently respond appropriately to a supervisor's instructions, have occasional contact with coworkers and supervisors, and adapt to occasional changes in essential work tasks. (*Id.*) He could work around others, but not on tasks requiring teamwork or working in tandem. (*Id.*) Plaintiff could have incidental contact with the public, but could not be involved in direct customer service. (*Id.*)

In reaching this RFC determination, the ALJ found that Plaintiff did not have the RFC to perform his past relevant work, relying on VE Meola's testimony that Plaintiff was unable to work as a Media Consultant (DOT 164.117-018), Advertising Representative (DOT 247.387-018), or Sales Representative (DOT 254.357-014). (R. 25.)

ALJ Allard partially concurred with the findings of Disability Determination Services ("DDS"), stating Plaintiff suffered moderate functional limitations, but could understand, recall, and carry out routine instructions, adjust to minor and routine work demands, relate to supervisors, sustain concentration for at least two hour intervals, and complete a normal workday and work week, where changes in routine were not demanding or fast paced. (R. 24.)[6]

The ALJ accorded significant weight to the opinion of Dr. Fox, whose mental status exam supports a "simple/low" social contact RFC. (R. 24-25.) ALJ Allard gave partial weight to Dr. Park and Dr. Arrington's opinions. (*Id.*) Specifically, the ALJ gave partial weight to Dr. Arrington's findings regarding Plaintiff's problems with understanding and memory, but little weight to a conclusory statement about Plaintiff's ability to function on a daily basis. (*Id.*) The ALJ gave little weight to the opinion of Dr. Semel, because his statements were conclusory, contrary to the objective medical evidence as a whole, and ultimately reserved for the decision of the Commissioner. (R. 25.)

At step five, ALJ Allard properly found that a significant number of jobs existed in the national economy that Plaintiff could perform. (R. 26.) She considered plaintiff's age, education, work experience, and RFC along with the Medical-Vocational Guidelines listed in 20 C.F.R. Part 404, Subpart P, Appendix 2. (*Id*.) ALJ Allard presented VE with various hypotheticals relating to Plaintiff's limitations and relied on the VE's testimony in making a finding of "not disabled." (*Id*.) The VE identified several jobs that an individual could perform with Plaintiff's age, education, work experience, and RFC, including a mail sorter (DOT 209.687-026), microfilm mounter (DOT 208.685-022), and weigher (DOT 732.687-086). (*Id*.) ALJ Allard found that this testimony was consistent with the Dictionary of Occupational Titles and properly determined that

[6] However, ALJ Allard noted DDS used an outdated program standard regarding Plaintiff's mental functioning and the record supports greater limits regarding social interaction and adaptation. (*Id.*)

Plaintiff was not disabled, as defined in the Act, at any time from his alleged onset date through his date last insured. (R. 27.)

On appeal, Plaintiff claims ALJ Allard: 1) disregarded medical questionnaires and consultative examinations without explanation; 2) did not give appropriate weight to Plaintiff's treating physicians; 3) ignored and mischaracterized Plaintiff's hearing testimony; and 4) failed to give specific reasons for discrediting Plaintiff's testimony. (Pl.'s Br. at 23-25, 27.) This Court considers the arguments in turn and finds that they are not supported by the record. ALJ Allard's findings are supported by substantial evidence, and she was free to conclude non-disability based on the sparse treatment, lack of treatment notes, and Plaintiff's testimony.

First, Plaintiff argues that the ALJ disregarded Dr. Crain's consultative examination, Dr. Semel's opinion, and Dr. Fox's questionnaires. (Pl.'s Br. at 23-24.) However, an ALJ is not required to discuss every "tidbit of evidence included in the record." *Hur v. Barhart*, 94 F. App'x 130, 133 (3d Cir. 2004); *see also Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) (explaining that an ALJ is not required to refer to every treatment note in an extensive medical record). Further, simply because an ALJ does not cite to specific evidence does not establish that the ALJ did not consider it. *Phillips v. Barnhart*, 91 F. App'x 775, 780 n.7 (3d Cir. 2004). ALJ Allard reached her decision "[a]fter careful consideration of all the evidence" and "of the entire record." (R. 15, 20.) When an ALJ states all evidence has been considered, "absent evidence to the contrary, we take her at her word." *Akrigg v. Comm'r of Soc. Sec.*, Civ. No. 17-0237, 2018 WL 1378699, at *9 (D.N.J. Mar. 19, 2018) (quoting *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014)). Additionally, the questionnaires do not fit the definition of "medical

opinions" provided by 20 C.F.R. § 404.1527(a)(1)[7] because, although many symptoms are described, specific functional restrictions are not. (R. 341-42; 358-67.)[8] A finding of related functional limitations, and not diagnosis alone, is necessary to establish disability. 20 C.F.R. § 404.1529(a).[9] Therefore, the ALJ was not required to weigh these questionnaires, especially when they are not supported by the medical evidence in the record.

Secondly, Plaintiff argues that ALJ Allard erred in failing to give any weight to Dr. Crain's examination and in affording only little weight to Dr. Semel's opinion. (Pl.'s Br. at 24-25.) However, an ALJ is free to give a treating physician's opinion less weight or even reject it, so long as the ALJ clearly explains her reasons.[10] *Salles*, 229 F. App'x at 148; *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). ALJ Allard adequately explained her treatment of Dr. Semel's letters and questionnaires based on their conclusory nature.[11] (R. 25, 341-43, 368-72.) Further, it is not clear Dr. Crain is a "treating source," as defined by 20 C.F.R. § 404.1527(a)(2) as a physician that has an ongoing relationship with the claimant and provides treatment or evaluation. If a claimant's relationship with a treating source does not stem from a medical need, but rather solely from a claimant's need to support a disability claim, it is a "nontreating source." 20 C.F.R. § 404.1527(a)(2). Here, Dr. Crain conducted an evaluation at the request of Plaintiff's former

[7] Medical opinions are defined as: "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).
[8] Dr. Fox does identify limitations with "paragraph B" criteria, but this is used during steps two and three of the sequential evaluation process, and not in assessing RFC, which requires more detail. SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).
[9] 20 C.F.R. § 404.1529(a) provides that "statements about your pain or other symptoms will not alone establish that you are disabled."
[10] This is the case unless the opinion was designated as having "controlling weight." *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 148 (3d Cir. 2007). An opinion will have "controlling weight" only if well supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with the record's substantial evidence. (*Id.*)
[11] Dr. Semel's letters also lacked any underlying treatment notes, specific functional limitations, the number of visits Plaintiff attended, or reviews of the medical record. (R. 341-43, 368-72.)

counsel. (R. 277.) He saw Plaintiff for two evaluations in 2011, and there is no evidence Plaintiff ever returned to Dr. Crain between 2011 and 2017. (*Id.*)

Plaintiff also alleges that ALJ Allard mischaracterized his ability to read the newspaper and failed to mention his testimony that he only showers or bathes two to three times per week. (Pl.'s Br. at 26.) However, many of Plaintiff's examinations documented good hygiene and the ALJ accurately quoted Plaintiff's testimony that he, "reads the newspaper; and sometime[s] it takes him 3 hours." (R. 19, 21, 23, 61.) Further, the ALJ is not required to discuss each and every statement in the record. *Hur*, 94 F. App'x at 133.

Lastly, Plaintiff contends the ALJ failed to give specific reasons for discrediting his testimony, quoting SSR 96-7(p).[12] (Pl.'s Br. at 27.) However, SSR 96-7(p) is inapplicable as it was superseded by SSR 16-3(p) as of March 28, 2016, approximately one year before Plaintiff's hearing. Further, the ALJ gave sufficient reasoning, stating that after careful consideration of the entire record, the medical history was "not necessarily consistent with [Plaintiff's] allegations of disability." (R. 22.) The ALJ cited physician opinions that Plaintiff was stable and could perform simple tasks independently, maintain concentration, and adhere to a regular schedule. (R. 24.)

## IV. CONCLUSION

Because this Court finds that ALJ Allard's factual findings were supported by substantial credible evidence in the record and that her legal conclusions were correct, the Commissioner's decision is **AFFIRMED**.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties

[12] SSR 96-7(p) states, "when evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements."